578 F.2d 221
 Mrs. Carnell RUSS, Verna Russ, a minor, Roosevelt Russ, a
minor, Angela Russ, a minor, Curtis Russ, a minor, Sylvia
Russ, a minor, Anthony Russ, a minor, Joyce Russ, a minor,
Trance Russ, a minor, and Patricia Russ, a minor, by their
mother and next friend, Mrs. Carnell Russ, Appellants,
v.
Charles Lee RATLIFF, Appellee.
 No. 78-1020.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1978.
Decided July 10, 1978.
 
 Nathaniel R. Jones and James I. Meyerson (argued), N. A. A. C. P., New York City, and George Van Hook, Jr., El Dorado, Ark., filed appendix, supplemental appendix and briefs for appellants.
 Odell C. Carter, Star City, Ark., argued and filed brief for amicus curiae, City of Star City, Ark.
 Before STEPHENSON and HENLEY, Circuit Judges, and INGRAHAM,* Senior Circuit Judge.
 HENLEY, Circuit Judge.
 
 
 1
 This civil rights case is before us on an interlocutory appeal under 28 U.S.C. § 1292(b) from an order of the United States District Court for the Eastern District of Arkansas (Senior Judge Oren Harris) denying plaintiffs leave to amend their complaint following a partial remand of the case to the district court after an initial appeal taken by plaintiffs from an adverse judgment on the merits. Russ v. Ratliff, 538 F.2d 799 (8th Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977).
 
 
 2
 The suit arises from the fact that on the afternoon of May 31, 1971 Carnell Russ, a young black man who was married and the father of a number of minor children, was unjustifiably shot and killed by Charles Lee Ratliff who at the time was a member of the police force of Star City, Arkansas.[1] Prior to the shooting Russ had been arrested for speeding by Trooper Jerry Green of the Arkansas State Police, and had been taken to the local jail in Star City which at the moment was in the charge of Ratliff. The shooting occurred after the deceased and Ratliff became involved in an argument about bail for the deceased. The facts in the case are fully set out in our original opinion and need not be stated here in any detail.
 
 
 3
 The suit was filed in 1973 by the widow and minor children of the deceased who sought damages on account of the killing of their husband and father. Jurisdiction was predicated upon 28 U.S.C. § 1343(3) and (4) read in connection with 42 U.S.C. § 1983. In addition to Ratliff, plaintiffs named as defendants State Trooper Green who had arrested the deceased and who was present when the shooting occurred, Norman Draper, who was also present at the shooting,[2] and the mayor and members of the city council of Star City. The City itself was not made a party to the suit.[3]
 
 
 4
 The defendants answered and denied liability.[4] The case was tried to a jury with Judge Harris presiding. At the conclusion of plaintiffs' case the trial judge granted directed verdicts in favor of the mayor and councilmen and in favor of Draper. The case went to the jury as against Green and Ratliff, and the jury found in favor of both of those defendants. The trial court denied plaintiffs' motion for judgment notwithstanding the verdict or alternatively for a new trial. The original appeal followed.
 
 
 5
 On that appeal we held that the district court did not err in directing verdicts in favor of the mayor, councilmen and Draper. We also held that the jury verdict favorable to the defendant, Green, was justified under the evidence. As to Ratliff, we expressed a directly contrary view. However, due to the procedural course that the case had taken during the trial, we did not consider that plaintiffs were entitled to judgment n. o. v. against Ratliff, and as to him the case was remanded for a new trial on all issues. In all other respects the judgment of the district court was affirmed. 538 F.2d at 805.
 
 
 6
 By the time the case got back to the district court in 1977, Ratliff was no longer employed by the City and seems to have left the state. In any event, it seems highly doubtful that any substantial judgment against him would be collectible.
 
 
 7
 Confronted with the situation that has just been outlined, the plaintiffs in September, 1977 filed a motion for leave to amend their complaint for the purpose of bringing the City into the case as a defendant and asserting a claim against it on the basis of 28 U.S.C. § 1331(a) read in connection with the eighth and fourteenth amendments to the Constitution.[5] Plaintiffs also filed other post-remand motions with which we are not concerned.
 
 
 8
 Judge Harris conducted a hearing on those motions in November, 1977 and denied them. This appeal involves only the motion for leave to amend the complaint so as to name the City as a defendant and to attempt to state a claim against it under § 1331(a). We affirm the order of the district court denying that motion.
 
 
 9
 The motion for leave to amend so as to bring the City into the case was filed more than six years after the death of Russ, and a problem of limitations is at once presented.
 
 
 10
 It is well established that in a suit brought under federal civil rights statutes the federal courts will apply the forum state's statute of limitations that is most apposite to the claim asserted. See O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); Peterson v. Fink, 515 F.2d 815 (8th Cir. 1975); Brown v. United States, 486 F.2d 284 (8th Cir. 1973), aff'g Brown v. United States, 342 F.Supp. 987 (E.D.Ark.1972); Johnson v. Dailey, 479 F.2d 86 (8th Cir.), cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973); Green v. McDonnell Douglas Corp., 463 F.2d 337 (8th Cir. 1972); Glasscoe v. Howell, 431 F.2d 863 (8th Cir. 1970).
 
 
 11
 It is clear that if plaintiffs had sued the City initially in 1977, their claim would have been barred by any Arkansas statute of limitations that might be applicable to the case.[6] Counsel for plaintiffs contend, however, that in view of the provisions of Fed.R.Civ.P. 15(c), as amended in 1966, plaintiffs' claim against the City would relate back to the commencement of the action in 1973.
 
 
 12
 In relevant part, Rule 15(c) provides that for limitations purposes an amendment changing a party will relate back to the filing of the suit if (1) the party to be brought into the case has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
 
 
 13
 In this case it is obvious that the City was aware of the pendency of the suit since the mayor, city councilmen and Draper were named as defendants and were represented by the city attorney. We are not persuaded, however, that the City would not be prejudiced in its defense if put to trial today in view of the fact that Trooper Green and Norman Draper no longer have any interest in the case and of the further fact that Ratliff is no longer employed by the City and may have left the state.
 
 
 14
 Additionally, the failure of plaintiffs to name the City as a defendant originally was not due to any mistake in the identity of the proper party to be sued. Throughout these proceedings the plaintiffs have been represented by knowledgeable civil rights attorneys. Those attorneys chose as defendants persons whom they thought to be proper parties and who were proper parties. And they made no effort to join the City as a defendant with either § 1343(3) and (4) or § 1331(a) as a jurisdictional basis until after they had tried the case on the merits and until they finally wound up with a single defendant who may be judgment proof.
 
 
 15
 Assuming arguendo, however, that if Judge Harris had permitted the amendment, it would have related back to 1973, the fact remains that the question of whether the amendment should have been allowed was one that addressed itself to the discretion of the district court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); In re Cessna Distributorship Antitrust Litigation, 532 F.2d 64, 68 (8th Cir. 1976); Hale v. Ralston Purina Co., 432 F.2d 156, 159 (8th Cir. 1970); 6 Wright & Miller, Federal Practice & Procedure, § 1484, p. 418.
 
 
 16
 From the remarks made by Judge Harris at the conclusion of the hearing on the post-remand motions filed by plaintiffs and from the statements appearing in his order denying those motions, it is clear to us that he gave careful consideration to the motions, including the one with which we are immediately concerned, and determined that in view of the time element and of the history of the case they should be denied. We cannot say that his action constituted error or abuse of discretion.[7]
 
 
 17
 Affirmed.
 
 
 
 *
 The Honorable Joe M. Ingraham, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Star City is a municipality established pursuant to Arkansas law. It is the county seat of Lincoln County, Arkansas and is located some miles south of the larger city of Pine Bluff
 
 
 [2]
 On May 31, 1971 Draper was being trained as a Star City policeman and was to go to work the next day. However, when Russ was killed, Draper was not on the municipal payroll
 
 
 [3]
 As above stated, subject matter jurisdiction was predicated on the federal civil rights statutes. There was also a pendent claim for damages based on the Arkansas wrongful death statute. Ark.Stat.Ann. §§ 27-906 et seq. (Repl.1962)
 
 
 [4]
 Ratliff defended his own case. The mayor, the members of the council and Draper were represented by the city attorney. Trooper Green was represented by an Assistant Attorney General of the State of Arkansas
 
 
 [5]
 As of that time, it was not considered that a political subdivision of a state, such as a county, city or town, was a "person" suable under the provisions of 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 187-92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)
 
 
 [6]
 The applicable statute probably would have been the three year statute that appears as Ark.Stat.Ann. § 37-206 (Repl.1962); otherwise the applicable statute would have been the five year statute that appears as Ark.Stat.Ann. § 37-213 (Repl.1962). See the discussions in Brown v. United States and Glasscoe v. Howell, both supra
 
 
 [7]
 The view that we take of the case renders it unnecessary for us to consider certain substantive questions that a case against the City would present. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Owen v. City of Independence, Mo., 560 F.2d 925 (8th Cir. 1977), petition for writ of certiorari pending. See also Monell v. Dept. of Social Services of the City of New York, --- U.S. ----, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which overrules Monroe v. Pape, supra, at least to the extent that Pape holds that a municipality is not a "person" within the meaning of 42 U.S.C. § 1983. We note, however, that Monell preserves the immunity of a municipality from tort liability on the basis of the doctrine of respondeat superior in § 1983 context, and it is on the basis of that doctrine that plaintiffs through their motion for leave to amend sought to hold the City liable